40 A.3d 1028

Curtis Windell ALSTON

v.

STATE of Maryland.

No. 121, Sept. Term, 2009.

Court of Appeals of Maryland.

March 23, 2012.

Rachel Marblestone Kamins (Bennett & Bair, LLC, Greenbelt, MD), on brief, for petitioner.

Mary Ann Ince, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, JOHN C. ELDRIDGE (Retired, Specially Assigned), and LAWRENCE F. RODOWSKY (Retired, Specially Assigned), JJ.

JOHN C. ELDRIDGE (Retired, Specially Assigned), J.

The petitioner, Curtis Windell Alston, was convicted of first degree murder and related offenses. He was sentenced to life in prison without parole for first degree murder and lesser terms for the other offenses. In an action under the Postconviction Procedure Act, the postconviction trial court vacated Alston's convictions and sentences and granted him a new trial. The State filed no application for leave to appeal the postconviction trial court's judgment. Forty-four days after the entry of the final judgment in the postconviction case, the State filed in that case a "Motion to Reconsider [the] Court's Order and Opinion Granting Post Conviction Relief." Subsequently, the court did reconsider its earlier judgment and denied Alston's petition for postconviction relief, thereby re-imposing Alston's original convictions and sentences.

The present case is a proceeding under Maryland Rule 4–345(a) which states: "The court may correct an illegal sentence at any time." The issue before us is whether the postconviction trial court's re-imposition of Alston's original sentences, after having vacated those sentences and ordered a new trial, constituted the imposition of illegal sentences within the meaning of Rule 4–345(a) and our cases.

## I.

The issue and pertinent facts in this case relate to procedural matters; consequently, we shall not set forth the facts concerning the substantive offenses which Alston was charged with committing.

In January 1999, Alston was indicted, in the Circuit Court for Prince George's County, for one count of first degree murder, two counts of using a handgun in a felony or crime of violence, one count of attempted murder, one count of first

degree assault, one count of conspiracy to commit first degree murder, and one count of conspiracy to commit attempted murder. Alston's jury trial took place in July 1999, and he was found guilty on all counts except attempted murder and conspiracy to commit attempted murder. The next month, Alston was sentenced to the following terms of imprisonment: life without parole for first degree murder; twenty years consecutive on each of the handgun counts; twenty-five years consecutive for first degree assault; and a concurrent life sentence for conspiracy to commit murder. The Court of Special Appeals affirmed the judgments in an unreported opinion, and this Court denied Alston's petition for a writ of certiorari. *Alston v. State,* 360 Md. 273, 757 A.2d 809 (2000).

In August 2003, Alston filed, in the Circuit Court for Prince George's County, an action under the Maryland Uniform Postconviction Procedure Act, presently codified in Maryland Code (2001, 2008 Repl.Vol.), § 7–101 *et seq.* of the Criminal Procedure Article. The petition raised numerous issues, several of which concerned Alston's constitutional right to the effective assistance of counsel at his July 1999 criminal trial. Alston's petition requested that the "court vacate Petitioner's convictions and sentences and grant him a new trial." At the hearing on the petition, both Alston's counsel at his 1999 criminal trial and Alston himself testified.

The Circuit Court on March 28, 2005, filed a detailed opinion holding that Alston was denied his right to the effective assistance of counsel at his criminal trial. The basis for this holding was that Alston had not been presented to a District Court Commissioner for about 48 hours from the time of his arrest, that he was held for 23 hours before he gave the police incriminating statements, and that counsel failed to argue that this delay in presenting Alston to a Commissioner, and this violation of the prompt presentment rule [1] should be given "very heavy weight" in the court's determination of whether the incriminating statements were voluntary.

---

1.  Maryland Rule 4–212(f).

The Circuit Court ordered "that Petitioner's Motion for Post Conviction Relief is Granted," thereby vacating Alston's convictions and sentences and awarding him a new trial. The opinion and order were duly entered on the docket, and they constituted a final judgment under Maryland Rule 4–407(d). As earlier pointed out, the State did not file an application for leave to appeal the postconviction trial court's judgment.[2]

On May 11, 2005, forty-four days after the entry of final judgment in the postconviction case, the State filed in that case a "Motion to Reconsider Court's Order and Opinion Granting Post Conviction Relief."[3] A hearing on the State's motion was held on September 8, 2005, and on September 20, 2005, the Circuit Court filed an opinion and an order stating that "Petitioner's Motion for Post Conviction relief is Denied." In its opinion, the Circuit Court treated the State's motion for reconsideration as a motion to "reopen" the postconviction proceeding. The court held that, under § 7–104 of the Postconviction Procedure Act, "this Court has authority to reopen the petition for post conviction relief," if "the action is in the interests of justice," and that, in Alston's case, "justice so requires."[4] As to the merits, the postconviction court reversed its earlier position because it found that the voluntariness of Alston's confession, based in part on "the delayed

---

2. Section 7–109(a) of the Postconviction Procedure Act provides as follows:
   "**§ 7–109. Appeal of final order.**
   (a) *Application.*—Within 30 days after the court passes an order in accordance with this subtitle, a person aggrieved by the order, including the Attorney General and a State's Attorney, may apply to the Court of Special Appeals for leave to appeal the order."

3. Neither the Postconviction Procedure Act nor the Maryland Rules governing postconviction proceedings (Rules 4–401 through 4–408) contain any provisions authorizing motions for reconsideration in the postconviction trial court.

4. Section 7–104 states:
   "**§ 7–104. Reopening postconviction proceeding.**
   The court may reopen a postconviction proceeding that was previously concluded if the court determines that the action is in the interests of justice."

presentment of the petitioner to a Commissioner," had been "finally litigated" in Alston's direct appeal from the judgments at his 1999 criminal trial.

Alston filed an application for leave to appeal the Circuit Court's judgment reopening the postconviction proceeding and denying Alston's petition for postconviction relief, and the Court of Special Appeals granted leave to appeal. Alston argued, *inter alia,* that the State was not authorized to file a motion to reopen a postconviction action and that only the convicted person could file such a motion under § 7–104 of the Postconviction Procedure Act. The Court of Special Appeals, in an unreported opinion, did not decide the issues raised by Alston. Instead, the intermediate appellate court stated that "we are unable to determine the basis for the court's conclusion that justice required the reopening of [Alston's] previously concluded post conviction proceeding." The Court of Special Appeals remanded the "case to the post conviction court so that it can provide, on the record, an explanation for its determination that reopening [Alston's] post conviction proceeding was 'in the interests of justice.' "

Following the remand by the Court of Special Appeals, the postconviction trial court filed a brief opinion reiterating what it had previously written. The court stated that, in its view, § 7–104 of the Postconviction Procedure Act authorizes "either party to move for reconsideration of a ruling in a post conviction case." The postconviction trial court repeated that it "became aware that the issue of delay of presentment was litigated" on Alston's direct appeal from his original convictions. The Court of Special Appeals denied Alston's application for leave to appeal the postconviction trial court's ruling after the remand.

On April 18, 2008, Alston commenced the present case by filing in the Circuit Court for Prince George's County a motion to correct illegal sentences. Alston argued in the motion that the postconviction trial court's revocation of the order vacating his convictions and sentences, and re-imposing the sentences, constituted the imposition of illegal sentences. He claimed

that he was entitled to relief under Rule 4–345(a) which authorizes a court to "correct an illegal sentence at any time." The Circuit Court, without a hearing and in a one line order, denied Alston's motion to correct illegal sentences.

Alston appealed, and the Court of Special Appeals affirmed in an unreported opinion. Alston filed in this Court a petition for a writ of certiorari which this Court initially denied. *Alston v. State*, 410 Md. 560, 979 A.2d 707 (2009). Upon Alston's motion to reconsider, this Court did reconsider and granted the petition for a writ of certiorari. *Alston v. State*, 411 Md. 355, 983 A.2d 431 (2009).

## II.

The issue of whether Alston was entitled to relief in this proceeding under Rule 4–345(a) involves two subsidiary questions: 1. was the postconviction trial court's reimposition of Alston's original sentences, after having vacated those sentences and having ordered a new trial, unlawful? 2. if unlawful, was the re-imposition of the sentences cognizable under Rule 4–345(a)? We shall answer both questions in the affirmative.

## A.

When the postconviction trial court on March 28, 2005, filed, and the clerk entered, an opinion and order that Alston's postconviction petition be granted, thereby vacating Alston's original convictions and sentences and ordering a new trial, the court's order constituted a final judgment. *See* Maryland Rule 4–407(d) which provides: "(d) **Finality.** The statement and order [of the postconviction trial court] constitute a final judgment when entered by the clerk." Like most other final judgments, the judgment entered on March 28, 2005, was subject to appellate review.

When a final judgment in a postconviction case is adverse to the State, the only remedy granted to the State in the Postconviction Procedure Act is to "apply to the Court of Special Appeals for leave to appeal the order." *See* § 7–109(a), *supra* n. 2. To reiterate, the State did not file an

application for leave to appeal the final judgment of the postconviction trial court vacating Alston's convictions and sentences and ordering a new trial. Instead, forty-four days after the final judgment, the State filed in the postconviction trial court a motion for reconsideration.

In holding that it could reopen the postconviction case upon the State's motion for reconsideration, the postconviction trial court relied upon § 7–104 of the Postconviction Procedure Act, with the court stating "that its revisory power under Section 7–104 ... permits either party to move for reconsideration of a ruling in a post conviction case." Similarly, § 7–104 is the only ground relied upon by the State in support of the postconviction trial court's decision to reconsider its prior judgment.

Section 7–104 provides:

"The court may reopen a postconviction proceeding that was previously concluded if the court determines that the action is in the interests of justice."

Although § 7–104 itself does not contain language specifying who may file an application to reopen a previously concluded postconviction proceeding, the statute as a whole and the legislative history of § 7–104 make it clear that only a "convicted person" may bring either a postconviction proceeding or a petition to reopen a postconviction proceeding.

Section 7–104 of the Postconviction Procedure Act, authorizing the reopening of postconviction proceedings, was not enacted in isolation. Instead, it was enacted along with § 7–103 of the Act, and particularly § 7–103(a) which allows the filing of only one petition for "relief under this title." [5]

---

5.  Section 7–103 provides as follows:

"**§ 7–103.  Number and time of filing of petitions.**

(a) *Only one petition allowed.*—For each trial or sentence, a person may file only one petition for relief under this title.

(b) *10–year filing period.*—(1)  Unless extraordinary cause is shown, in a case in which a sentence of death has not been imposed, a petition under this subtitle may not be filed more than 10 years after the sentence was imposed.

Prior to 1986, the Postconviction Procedure Act placed no limit upon the number of petitions for postconviction relief that a convicted person could file. Ch. 647 of the Acts of 1986, however, provided that a "person may not file more than two petitions, arising out of each trial, for relief" under the Postconviction Procedure Act. The two-petition limit remained in effect until 1995. In addition, before 1995 there was no provision in the statute for "reopening" a postconviction proceeding.

The General Assembly, by Ch. 110 of the Acts of 1995, enacted several changes in the Postconviction Procedure Act. With regard to the number of petitions a convicted person could file, this Court in *Grayson v. State*, 354 Md. 1, 4, 728 A.2d 1280, 1281 (1999), summarized one change as follows:

"The General Assembly in 1995 once again addressed the number of petitions under the Post Conviction Procedure Act which could be filed to challenge a particular conviction. By Ch. 110 of the Acts of 1995, which was captioned 'Death Penalty Reform' and which primarily amended statutory provisions relating to capital punishment, the General Assembly also amended subsection (a)(2) of the Post Conviction Procedure Act to provide as follows:

'(2)(I) A person may file only one petition, arising out of each trial, for relief under this subtitle.

'(II) The court may in its discretion reopen a postconviction proceeding that was previously concluded if the court determines that such action is in the interests of justice.'

The first of the above-quoted paragraphs was subsequently codified as Art. 27, § 645A(a)(2)(i) and the second as Art. 27, § 645A(a)(2)(iii)." [6]

---

(2) In a case in which a sentence of death has been imposed, Subtitle 2 of this title governs the time of filing a petition."

**6.** By Ch. 10 of the Acts of 2001, the Postconviction Procedure Act was re-codified as §§ 7–101 through 7–109, §§ 7–201 through 7–204, and § 7–301 of the Criminal Procedure Article.

*See also State v. Williamson,* 408 Md. 269, 274–276, 969 A.2d 300, 303–304 (2009). At the same 1995 legislative session, Ch. 258 of the Acts of 1995 was enacted, and it also amended former Art. 27, § 645A(a)(2), by providing:

> "II. Unless extraordinary cause is shown, in a case in which a sentence of death has not been imposed, a petition under this subtitle may not be filed later than 10 years from the imposition of sentence."

Consequently, in 1995, two different provisions were enacted to be in the same place in the code, with each one being a second paragraph to the newly amended subsection limiting a person to one postconviction petition. The codifiers initially codified the three provisions as paragraphs (i), (ii), and (iii) of then § 645A(a)(2). In 2001, the codifiers made the reopening provision a separate § 7–104. The Revisor's Note immediately after the reopening provision stated that the recodification was "without substantive change from former Art. 27, § 645A(a)(2)(iii)."

In addition, Senate Bill 340, which became Ch. 110 of the Acts of 1995, provided in its title, *inter alia,* that the Act was "FOR the purpose of ... altering the number of petitions for postconviction relief, arising out of each trial, that a person is permitted to file; permitting a circuit court to reopen a postconviction proceeding under certain circumstances...."

It seems clear that the reopening provision was tied to the provision limiting the number of petitions a person could file, and reopening was for the purpose of providing a safeguard for the occasional meritorious case where the convicted person had already filed one postconviction petition. The reopening paragraph was not to authorize a second postconviction petition with all of the requirements applicable to postconviction petitions; rather it was for the case where a circuit court, in its discretion, believed that, in the interests of justice, a convicted person's conviction or sentence should be examined. *See Evans v. State,* 396 Md. 256, 277–278, 914 A.2d 25, 37–38 (2006), *cert. denied,* 552 U.S. 835, 128 S.Ct. 65, 169

L.Ed.2d 53 (2007); *Gray v. State,* 388 Md. 366, 382–384, 879 A.2d 1064, 1073–1074 (2005).

The legislative history of Ch.110 of the Acts of 1995 confirms that the reopening provision was tied to the single petition provision, and was a safeguard for criminal "defendants." Nothing in the legislative history suggests that the reopening clause was for either side to file a motion for reconsideration. Thus, during the 1995 session of the General Assembly, the Governor's Chief Legislative Officer testified before the Senate Judicial Proceedings Committee on Senate Bill 340, which became Ch. 110, as follows (emphasis added):

"In [1986], the General Assembly capped the number of postconviction petitions to two. However, there is no apparent rationale for not limiting the defendant to one petition. Common sense dictates that the defendant should include all grounds for relief in one petition. The right to file a second postconviction petition simply affords the ... defendant an unwarranted opportunity for delay. Senate Bill 340 limits the *defendant* to one postconviction petition unless the court determines that reopening the case is necessary to prevent a miscarriage of justice."

The Chairperson of the Governor's Commission on the Death Penalty, which drafted Senate Bill 340, also testified on the Bill before the Senate Judicial Proceedings Committee. He stated:

"This amendment would reduce the number of post conviction petitions from two to one, but would permit a court to reopen a previously concluded proceeding if necessary to avoid a miscarriage of justice. This balances the need for procedural safeguards with the need for stemming cost and delay. There simply is no need for routine second petitions—counsel can and should put all claims into a first petition. At the federal level, a defendant gets only one habeas corpus petition; he should not get more than one post conviction petition."

The "Floor Report" of the Senate Judicial Proceedings Committee on Senate Bill 340 of the 1995 session stated:

"The bill eliminates the right of a defendant to file a second postconviction petition. However, the bill permits a court to reopen a proceeding if a reopening is necessary to avoid a 'miscarriage of justice.'"

The "Bill Analysis" Report of the House Judiciary Committee on Senate Bill 340 contained similar language.

The history of the reopening provision, § 7–104 of the Postconviction Procedure Act, demonstrates that the provision was simply to provide a limited exception, for the benefit of criminal "defendants," to the restriction upon the number of postconviction petitions which they could file.

Other sections of the Postconviction Procedure Act also confirm that only a convicted person, who is imprisoned or on parole or probation, may file a petition for postconviction relief or a petition to reopen under the Act. Thus, the first section of the Act clearly delineates the applicability of the entire statute, which would include § 7–104:

"§ 7–101. Scope of title.

This title applies to a person convicted in any court in the State who is:

(1) confined under sentence of death or imprisonment; or

(2) on parole or probation."

■ The next section specifies who may institute a "proceeding" under the statute (emphasis added):

"§ 7–102. **Right to begin proceeding.**

(a) *In general.*—Subject to subsection (b) of this section §§ 7–103 and 7–104 of this subtitle and Subtitle 2 of this title, *a convicted person may begin a proceeding under this title* in the circuit court for the county in which the conviction took place at any time if the person claims that:

(1) the sentence or judgment was imposed in violation of the Constitution of the United States or the Constitution or laws of the State;

(2) the court lacked jurisdiction to impose the sentence;

(3) the sentence exceeds the maximum allowed by law; or

(4) the sentence is otherwise subject to collateral attack on a ground of alleged error that would otherwise be available under a writ of habeas corpus, writ of coram nobis, or other common law or statutory remedy.

(b) *Requirements to begin proceeding.—A person may begin a proceeding* under this title if:

(1) the person seeks to set aside or correct the judgment or sentence; and

(2) the alleged error has not been previously and finally litigated or waived in the proceeding resulting in the conviction or in any other proceeding that the person has taken to secure relief from the person's conviction."

A "proceeding" under the Act covers both a "petition" under § 7–103 and a reopening proceeding under § 7–104. In fact, it is noteworthy that § 7–104 uses the word "proceeding" whereas § 7–103 does not. *See also Thanos v. State,* 332 Md. 511, 520, 632 A.2d 768, 772 (1993) (A particular "hearing was not a post conviction proceeding .... [because the] hearing was initiated by a motion filed by the State, not the defendant, and did not involve a request for relief by the defendant").

There is no support in the language of the Postconviction Procedure Act, in the history of the Act, or in any of this Court's opinions, for the State's and the Circuit Court's position that the State could reopen a proceeding under § 7–104. It is clear that the reopening provision is solely for the benefit of a "convicted person." Consequently, the postconviction trial court's reopening of Alston's postconviction proceeding and its re-imposition of Alston's convictions and sentences was unauthorized and unlawful.

## B.

The remaining question is whether the postconviction trial court's unlawful reimposition of Alston's original convictions and sentences is cognizable in an action to correct illegal sentences under Maryland Rule 4–345(a).

There are many opinions of this Court delineating the scope of Rule 4–345(a) or its predecessor rules. Several recent ones include, *e.g., Matthews v. State,* 424 Md. 503, 36 A.3d 499 (2012); *Tshiwala v. State,* 424 Md. 612, 37 A.3d 308 (2012); *Cuffley v. State,* 416 Md. 568, 575 n. 1, 7 A.3d 557, 561 n. 1 (2010); *Taylor v. State,* 407 Md. 137, 141 n. 4, 963 A.2d 197, 199 n. 4 (2009); *Montgomery v. State,* 405 Md. 67, 74, 950 A.2d 77, 81–82 (2008); *Hoile v. State,* 404 Md. 591, 620–623, 948 A.2d 30, 47–50, *cert. denied sub nom. Palmer v. Maryland,* 555 U.S. 884, 129 S.Ct. 257, 172 L.Ed.2d 146 (2008); *Chaney v. State,* 397 Md. 460, 466, 918 A.2d 506, 509–510 (2007); *State v. Wilkins,* 393 Md. 269, 273–276, 900 A.2d 765, 767–770 (2006); *Evans v. State,* 382 Md. 248, 278–280, 855 A.2d 291, 309 (2004), *cert. denied,* 543 U.S. 1150, 125 S.Ct. 1325, 161 L.Ed.2d 113 (2005).

In determining the applicability of Rule 4–345(a), the most important principle is "that, as a general rule, a Rule 4–345(a) motion to correct an illegal sentence is not appropriate where the alleged illegality 'did not inhere in [the defendant's] sentence.' " *Evans v. State, supra,* 382 Md. at 278, 855 A.2d at 309, quoting *State v. Kanaras,* 357 Md. 170, 185, 742 A.2d 508, 517 (1999). *See, e.g., Chaney v. State, supra,* 397 Md. at 466, 918 A.2d at 509–510 (A Rule 4–345(a) motion to correct an illegal sentence is "limited to those situations in which the illegality inheres in the sentence itself"); *State v. Wilkins, supra,* 393 Md. at 275, 900 A.2d at 769 ("An error committed by the trial court during the sentencing proceeding is not ordinarily cognizable under Rule 4–345(a) where the resulting sentence or sanction is itself lawful").

There is one type of illegal sentence which this Court has consistently held should be corrected under Rule 4–345(a). Where the trial court imposes a sentence or other sanction upon a criminal defendant, and where no sentence or sanction should have been imposed, the criminal defendant is entitled to relief under Rule 4–345(a). *See, e.g., Matthews v. State, supra,* 424 Md. at 512–513, 36 A.3d at 505, quoting *Montgomery v. State, supra,* 405 Md. at 74–75, 950 A.2d at 82 ("A

motion to correct an illegal sentence ordinarily can be granted only where there is some illegality in the sentence itself *or where no sentence should have been imposed,*" emphasis added); *Taylor v. State, supra,* 407 Md. at 141 n. 4, 963 A.2d at 199 n. 4, quoting *Baker v. State,* 389 Md. 127, 133, 883 A.2d 916, 919 (2005) ("[A] motion to correct an illegal sentence" is " 'entertained . . . where . . . the sentence never should have been imposed' "); *State v. Wilkins, supra,* 393 Md. at 273–274, 900 A.2d at 768 ("[A] motion to correct an illegal sentence can be granted . . . where no sentence should have been imposed").

Several cases in this Court have involved situations where no sentence or sanction should have been imposed, and this Court has held that relief under Rule 4–345(a) was appropriate. Judge Harrell for the Court in *Hoile v. State, supra,* 404 Md. at 621, 948 A.2d at 48, described three of these cases as follows:

"*See Ridgeway v. State,* 369 Md. 165, 171, 797 A.2d 1287, 1290 (2002) (no sentence should have been imposed on the defendant for certain assault charges because the defendant was acquitted of those charges); *Holmes v. State,* 362 Md. 190, 195–96, 763 A.2d 737, 740 (2000) (sentence of probation with home detention as a condition of probation was illegal because the trial court lacked statutory authority to impose such a condition); *Moosavi v. State,* 355 Md. 651, 662, 736 A.2d 285, 291 (1999) (sentence was illegal because the defendant was convicted under an inapplicable statute)."

A seminal case with regard to Rule 4–345(a) is *Walczak v. State,* 302 Md. 422, 488 A.2d 949 (1985).[7] In that case, the trial court ordered the defendant Walczak, as a condition of probation, to pay restitution to a victim of a crime (armed robbery) of which Walczak had not been convicted. Walczak

---

7. Prior to *Walczak,* opinions of Maryland's appellate courts were in substantial conflict regarding the Rule authorizing the correction of illegal sentences. *See Walczak,* 302 Md. 422, 425–427, 488 A.2d 949, 950–951 (1985). The *Walczak* opinion resolved the conflicts among the appellate opinions.

failed to object in the trial court to the restitution, and the Court of Special Appeals held that Walczak had waived the issue. This Court, however, held that the restitution order was not authorized by statute and that it should not have been imposed. The Court further held that it was an illegal sentence, and, under Rule 4–345(a), it should be corrected despite the failure to object in the trial court. *See also Jones v. State*, 384 Md. 669, 866 A.2d 151 (2005) (holding that, when the jury's verdict of guilty on a count was not orally announced in open court, and the jury was not polled and harkened to the verdict on that count, no sentence should have been imposed on that count, and the sentence on the count was illegal within the meaning of Rule 4–345(a)).

Turning to the case at bar, as previously discussed, Alston's petition under the Postconviction Procedure Act requested that the postconviction trial court "vacate Petitioner's convictions and sentences and grant him a new trial." The postconviction trial court on March 28, 2005, rendered, and entered on the docket, an opinion and an order "that Petitioner's Motion for Postconviction Relief is Granted." By granting the petition, the court granted the relief requested; thus, the order vacated the convictions and sentences and awarded Alston a new trial.[8] This was a final judgment under Rule 4–407(d), subject only to the State's right, within 30 days, to apply to the Court of Special Appeals for leave to appeal.

When the State decided not to seek leave to appeal, the postconviction trial court's order became fully effective. Alston at that time had no convictions and no sentences under the January 1999 indictment; he faced a trial of the charges in

---

8. Even if the postconviction trial court had only granted a new trial to Alston, the effect would have been the same. *See, e.g., Cottman v. State*, 395 Md. 729, 734, 912 A.2d 620, 622 (2006) ("The effect of granting a new trial was to vacate the original judgment and conviction"); *Cook v. Toney*, 245 Md. 42, 50, 224 A.2d 857, 861 (1966) (An earlier "verdict ... was completely eliminated by the [later] granting of the new trial"); *Snyder v. Cearfoss*, 186 Md. 360, 367, 46 A.2d 607, 610 (1946) ("It is generally recognized that the effect of granting a motion for a new trial is to leave the cause in the same condition as if no previous trial had been held"), and cases there cited.

that indictment if the State decided to re-try him. When the postconviction trial court in September 2005 unlawfully reopened the postconviction proceeding that had terminated on March 28, 2005, and unlawfully denied Alston any "Postconviction Relief," the effect of the court's action was to impose, illegally, convictions and sentences upon a person whose convictions and sentences had been vacated. The action by the postconviction trial court in Alston's postconviction case was essentially similar to the imposition of convictions and sentences on charges of which the defendant had been acquitted, which was involved in *Ridgeway v. State, supra*, 369 Md. at 171–172, 797 A.2d at 1290. Although Alston had not been acquitted of the charges when the convictions and sentences were re-imposed in September 2005, his convictions and sentences had been vacated. Legally, he was in the position of one who was awaiting trial on those charges.

Under our decisions, the postconviction trial court's illegal action is cognizable under Rule 4–345(a). Upon remand, the Circuit Court for Prince George's County should correct the imposition of the illegal convictions and sentences by granting relief in accordance with the order of March 28, 2005.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY.**